## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**CESAR MUNOZ,**                           )
                                           )
     **Plaintiff,**                    )
                                           )
**v.**                                     )    **Case No. _____**
                                           )
**OFFICER NORBERT RIVERA,**                )
**DETECTIVE EDWIN DICKINSON,**             )
**DETECTIVE ROBERT RUTHERFORD and**        )
**the CITY OF CHICAGO,**                   )
                                           )    **Jury Trial Demanded**
     **Defendants.**                   )

### COMPLAINT

NOW COMES Plaintiff, CESAR MUNOZ, by and through his attorneys, KATHLEEN T. ZELLNER & ASSOCIATES, P.C., complaining of Defendants, OFFICER NORBERT RIVERA, DETECTIVE EDWIN DICKINSON, DETECTIVE ROBERT RUTHERFORD and the CITY OF CHICAGO, states as follows:

### Introduction

1.    This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of plaintiff's rights as secured by the United States Constitution.

2.    Specifically, as a result of the egregious police misconduct and abuse more fully described below, Plaintiff Cesar Munoz was wrongfully convicted of a murder that he did not commit. Plaintiff spent over ten years in prison, after Defendants secured Plaintiff's conviction by unlawful means in violation of Plaintiff's constitutional rights.

3.    Plaintiff asserted his innocence for many years without success. His first trial ending in a mistrial when the jury could not reach a decision. Plaintiff was retried and convicted but the Illinois Appellate Court reversed his conviction. After a third trial, Plaintiff was again

1

convicted. And again, the Illinois Appellate Court reversed that conviction. Upon a fourth trial, the trial judge acquitted Plaintiff. Plaintiff was able to prove the facts establishing both his innocence and the reprehensible pattern of police abuse and misconduct that gave rise to Plaintiff's wrongful convictions.

## Jurisdiction and Venue

4.      This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

5.      Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in this judicial district and the parties resided in this judicial district at the time the events took place.

## The Parties

6.      Plaintiff, Cesar Munoz ("Cesar") was at all relevant times herein a resident and citizen of the State of Illinois.

7.      Defendant, Norbert Rivera ("Defendant Rivera"), was at all relevant times herein employed as a police officer in the Chicago Police Department. The constitutional violations herein were undertaken with the assistance of, and participation by, other Chicago Police Department employees, presently known and unknown.

8.      Defendant, Edwin Dickinson ("Defendant Dickinson"), was at all relevant times herein employed as a police officer in the Chicago Police Department. The constitutional violations herein were undertaken with the assistance of, and participation by, other Chicago Police Department employees, presently known and unknown.

9.      Defendant, Robert Rutherford ("Defendant Rutherford"), was at all relevant times herein employed as a police officer in the Chicago Police Department. The constitutional

violations herein were undertaken with the assistance of, and participation by, other Chicago

Police Department employees, presently known and unknown.

10.    Defendant City of Chicago is an Illinois Municipal Corporation, and was at all

times the employer of Defendants Rivera, Dickinson and Rutherford. The City of Chicago is

responsible for the acts of defendant officers while employed by the City of Chicago and while

acting within the scope of their employment, pursuant to its statutory obligation to indemnify

them.

11.    Defendant Rivera, Defendant Dickinson and Defendant Rutherford (Defendant

Officers") were each engaged in the conduct complained of under the color of state law and in

the course and scope of his employment with the City of Chicago.

12.    Each of the Defendant Officers is sued in his individual capacity.

## Allegations of Fact

13.    On September 8, 1997, at 1707 North Artesian Avenue in Chicago, Illinois,

Magdaliz Rosario ("Ms. Rosario") used a gun to shoot herself and died as a result of that single

gunshot wound.

14.    Ms. Rosario had been distraught and depressed and chose to end her life on that

date.

15.    As of September 8, 1997, Cesar had been Ms. Rosario's long term boyfriend.

16.    Immediately after Ms. Rosario shot herself, Cesar called for help.

17.    Very shortly thereafter, police officers arrived at the scene.

18.    One of those officers was Defendant Rivera.

19.    Upon his arrival, Defendant Rivera saw Ms. Rosario lying facedown on the floor

with blood around her.

20.     Although he had no reason to suspect that Cesar had anything to with Ms. Rosario's death, Defendant Rivera immediately demanded to know where Ms. Rosario's husband was.

21.     Cesar's cousin, John Berrios, took Defendant Rivera across the street to 1704 North Artesian Avenue where Defendant Rivera confronted Cesar.

22.     From the moment Defendant Rivera confronted Cesar at that time and place, Cesar was not free to leave.

23.     Defendant Rivera  would later falsely report that Cesar was not acting appropriately in light of the fact that his girlfriend had just been shot.  Defendant Rivera made his false report knowingly.

24.     Defendant Rivera also would also later falsely report that Cesar told him that he and Ms. Rosario had gotten into a fight and that she ran into the bedroom, closing the door behind her.  Defendant Rivera made his false report knowingly.

25.     Cesar advised Defendant Rivera that the gun Ms. Rosario had used to shoot herself was in the garbage can below a window in their apartment.

26.     Defendant Rivera escorted Cesar to the garbage can.

27.     Defendant Rivera later falsely reported that the gun was about 1 1/2 feet deep in the 4 foot deep garbage can.  Defendant Rivera made his false report knowingly.

28.     Cesar had no gunshot residue on his hands at any time.

29.     Defendant Rivera prohibited Cesar from washing or wiping his hands and Cesar did not do so at any time.

30.     Defendant Rivera  handcuffed Cesar and escorted him to the police station where he would be later be confronted by Defendants Dickinson and Rutherford.

31.     At approximately 1:30 p.m. on September 8, 1997, Defendant Dickinson confronted Cesar.

32.     Defendant Dickinson would later falsely report that Cesar told him he was jealous of Richard Flores ("Flores") and "pissed off" that Ms. Rosario had gone to apply for a job with Flores that morning. Defendant Dickinson made his false report knowingly.

33.     Defendant Dickinson later falsely reported that Cesar told him after Flores and Ms. Rosario left to apply for the job, he started throwing things and around and messing up the apartment.  Defendant Dickinson made his false report knowingly.

34.     Defendant Dickinson later falsely reported that Cesar told him when he later confronted Ms. Rosario at the company where she was applying for a job, she told him he was "nuts." Defendant Dickinson made his false report knowingly.

35.     In reality, Cesar advised Defendant Dickinson of what had actually transpired that morning which did not involve any fight between Cesar and Ms. Rosario.

36.     But Defendant Dickinson would further falsely report that Cesar told him once he and Ms. Rosario returned home, Cesar apologized to Ms. Rosario for messing up the apartment. Defendant Dickinson made his false report knowingly.

37.     Defendant Dickinson would later falsely report that at that point, Ms. Rosario ran into the bedroom and locked her door and Cesar kicked the door in to gain access into the room. Defendant Dickinson made his false report knowingly.

38.     There was no damage to the handles or framing of the bedroom door.

39.     At approximately 3:15 p.m. Defendant Rutherford confronted Cesar.

40.     Cesar had already been tested for gunshot residue at the time Defendant Rutherford confronted him.

41.     Defendant Rutherford knew the results of that GSR testing had not implicated Cesar.

42.     Cesar gave a statement to Defendant Rutherford that was consistent with the statement he had given to Defendant Dickinson.

43.     Despite the fact that Cesar had provided consistent statements to the police and said nothing to implicate himself of any wrongdoing, Defendant Rutherford continued to accuse him of killing Ms. Rosario.  Defendant Dickinson had no evidence upon which to base a reasonable belief that Cesar had killed Ms. Rosario.

44.     Defendant Rutherford told Cesar that he knew he was guilty because Cesar had stated he had broken in the door  and there was no damage to the bedroom door.  Defendant Rutherford knew that the appearance of the bedroom door in combination with Cesar's statements did not implicate Cesar.

45.     Defendant Rutherford told Cesar that it was physically impossible for the gun to have landed where it did in light of Cesar's statements about the gun. Defendant Rutherford knew his statements to Cesar were untrue.

46.     Defendant Rutherford left and subsequently returned to confront Cesar. Defendant Rutherford falsely reported that during that subsequent interrogation, Cesar advised him of a different version of events inconsistent with his prior story.  Defendant Rutherford made his false report knowingly.

47.     Defendant Rutherford falsely reported that Cesar changed his statements in regard to how he entered the room and what he did with the gun.  Defendant Rutherford made his false report knowingly.

48.     Despite the fact that Cesar had provided consistent statements to the police and said nothing to implicate himself of any wrongdoing, Defendant Rutherford continued to accuse him of killing Ms. Rosario.  Defendant Rutherford had no evidence upon which to base a reasonable belief that Cesar had killed Ms. Rosario.

49.     Defendant Rutherford left and returned again to confront Cesar.  Defendant Rutherford falsely reported that Cesar voluntarily changed his story.

50.     Defendant Rutherford knew that there was no credible inconsistency in the statements made by Cesar over the many interrogation sessions to the different police officers.

51.     At all relevant times, Defendant Rivera, Defendant Dickinson and Defendant Rutherford were aware that prior to her death, Ms. Rosario had told her friends and family that she was severely depressed and felt like killing herself.

52.     Defendant Rivera, Defendant Dickinson and Defendant Rutherford provided the false and fabricated information set forth above to Dr. Nancy Jones. ("Dr. Jones").

53.     Based on that fabricated information, including but not limited to Defendant Officers' representations that Cesar had told multiple changing stories, which they knew were false, Dr. Jones concluded that Ms. Rosario died as a result of a gunshot wound to her face and the manner of death was homicide.

54.     No physical evidence connected Cesar to the shooting.

55.     However, the physical evidence did suggest that Ms. Rosario had committed suicide.

56.     Nevertheless, based on false statements and false reports fabricated by Defendant Officers,  Cesar was charged with murder.

57.     At the trials, Defendant Officers provided false and fabricated testimony and continued to cause witnesses to testify falsely in accordance with Defendant Officers' fabricated stories and reports. Based on the fabricated and false evidence, one trial ended in a mistrial and two subsequent juries found Cesar guilty.

58.     Cesar was sentenced to, and served lengthy periods of incarceration as a result of the false reports and fabricated evidence that caused his convictions.

59.     After Cesar successfully appealed his second murder conviction, he was forced to stand trial a fourth time for the murder of Ms. Rosario.

60.     On June 12, 2013 Cesar was acquitted.

61.     Cesar was wrongfully arrested, prosecuted and incarcerated based on false reports and fabricated evidence.

62.     As a direct result of Defendant Officers intentional fabrication of evidence, Cesar sustained physical injuries and damages including loss of his freedom, pain and suffering, severe mental anguish, emotional distress, loss of income, inadequate medical care, humiliation, indignities and embarrassment, degradation, permanent loss of natural psychological development, and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment, and freedom of speech and expression.

## COUNT I

**42 U.S.C. § 1983**
**Fabrication of Evidence**

**(Defendant Officers)**

63. Each paragraph of this Complaint is incorporated as if fully set forth herein.

64. As described more fully above, Defendant Officers while acting under color of law and within the scope of their employment as police officers, fabricated false evidence they knew to be false.

65. As a result of knowingly fabricating false evidence, Defendant Officers knew or should have known Cesar was innocent. Defendant Officers continued their investigation of Cesar despite knowing or having should have known Plaintiff was clearly innocent.

66. The evidence fabricated by Defendant Officers was used at trial to secure Cesar's unjust and wrongful conviction, resulting in Cesar serving over ten years of unjust and wrongful incarceration as well as causing him to face unwarranted charges and prosecution.

67. Defendant Officers' misconduct and fabrication of evidence directly resulted in the criminal convictions of Cesar, thereby denying his constitutional due process rights guaranteed by the Fifth and Fourteenth Amendments. Absent this misconduct the prosecution of Plaintiff could not have and would not have been pursued, much less resulted in convictions.

68.     The misconduct described in this Count was objectively unreasonable and was
        undertaken intentionally, with malice, and with a willful indifference to Cesar's
        constitutional rights.

69.     Defendant Officers' actions directly and proximately caused the injuries and
        damages to Cesar as claimed above, and constitute due process violations under
        the 14th Amendment of the U.S. Constitution.

        WHEREFORE, Cesar respectfully requests  that this Court enter judgment in his favor
and against Defendants, awarding compensatory damages, attorney's fees and costs against
Defendants as well as any other relief this Court deems just and appropriate.

## COUNT II

### 42 U.S.C. § 1983
### Failure to Intervene

### (Defendant Officers)

70.     Each paragraph of this Complaint is incorporated as if fully set forth herein.

71.     In the manner described above, during the constitutional violations described
        above, Defendant Officers stood by without intervening to prevent the
        misconduct, including but not limited to, the deliberate fabrication of evidence
        that caused Cesar's charges and convictions.

72.     As a result of Defendant Officers' failure to intervene to prevent the violation of
        Cesar's constitutional rights, Cesar suffered pain and injury, as well as emotional
        distress.  These Defendants had a reasonable opportunity to prevent this harm, but
        failed to do so.

73. The misconduct described in this Count was objectively unreasonable and was undertaken with malice and willful indifference to Cesar's constitutional rights.

74. Defendant Officers' actions directly and proximately caused the injuries and damages to Cesar as claimed above, and constitute due process violations under the 14th Amendment of the U.S. Constitution.

WHEREFORE, Cesar respectfully requests that this Court enter judgment in his favor and against Defendants, awarding compensatory damages, attorney's fees and costs against Defendants as well as any other relief this Court deems just and appropriate.

## COUNT III

### 42 U.S.C. § 1983
### Conspiracy To Deprive Of Constitutional Rights

### (Defendant Officers)

75. Each paragraph of this Complaint is incorporated as if fully set forth herein.

76. In the manner described above, Defendant Officers together reached an understanding, engaged in a course of conduct, engaged in a joint action, and otherwise conspired among and between themselves to deliberately fabricate false evidence against Cesar when they knew or should have known he was innocent, resulting in violations of Cesar's due process rights.

77. Defendant Officers, acting in concert among and between themselves and with unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

78. In furtherance of the conspiracy, each of the co-conspirators engaged in and facilitated numerous overt acts, including but not limited to arresting Cesar without probable cause, fabricating evidence and committing perjury during hearings and trials.

79. The misconduct described in this count was undertaken with malice , willfulness, and reckless indifference to Cesar's rights.

80. Said conspiracy and over acts were continued from on or about September 8, 1997 through to the present.

81. The conspiracy proximately caused the injuries to Cesar as set forth above.

WHEREFORE, Cesar respectfully requests that this Court enter judgment in his favor and against Defendants, awarding compensatory damages, attorney's fees and costs against Defendants as well as any other relief this Court deems just and appropriate.

## COUNT IV

### Illinois State Law
### 745 ILCS 10/9-102 – Indemnification

### (Defendant City of Chicago)

82. Each paragraph of this Complaint is incorporated as if fully set forth herein.

83. Defendant City of Chicago was the employer of Defendant Rivera, Defendant Dickinson and Defendant Rutherford at all times relevant to this complaint, as set forth above.

12

84.    All of the individually named Defendant Officers were at all relevant times
       acting within the course and scope of their employment.

85.    Pursuant to 745 ILCS 10/9-102, the governmental entity set forth above is liable
       to pay all judgments and settlements entered against each of its employees for the
       claims set forth above.

    WHEREFORE, pursuant to 745 ILCS 10/9-102, Cesar demands judgment against
Defendant City of Chicago in the amounts awarded to Cesar against the individual Defendants
by way of judgment or settlement, including any and all amounts awarded for damages, costs,
and attorney's fees.

## COUNT V

### Illinois State Law
### Respondeat Superior

### (Defendant City of Chicago)

86.    Each paragraph of this Complaint is incorporated as if fully set forth herein.

87.    At all times relevant to this complaint, Defendant Rivera, Defendant
       Dickinson and Defendant Rutherford acted as agents of, and in the scope of their
       employment with, Defendant City of Chicago.

88.    Defendant City of Chicago is liable for the torts of Defendant Rivera,
Defendant Dickinson and Defendant Rutherford for their violations of state law
under the doctrine of *respondeat superior.*

WHEREFORE, Cesar demands judgment against Defendant City of Chicago in the amounts awarded to Cesar against the individual Defendants by way of judgment or settlement, including any and all amounts awarded for damages, costs, and attorney's fees.

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully Submitted,

/s/ Kathleen T. Zellner
Kathleen T. Zellner

Kathleen Zellner & Associates, P.C.
1901 Butterfield Road, Suite 650
Downers Grove, Illinois 60515
(630) 955-1212
Atty No: 618457