IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Cesar Munoz                              )
                                         )
        Plaintiff,                       )
                                         )
                                         )
    v.                                   ) Case No. 14 C 6794
                                         )
                                         )
Officer  Norbert  Rivera,  Detective     )
Edwin  Dickinson,  Detective  Robert     )
Rutherford and the City of Chicago,      )
                                         )
        Defendants.                      )
                                         )

MEMORANDUM OPINION AND ORDER

In this action, plaintiff alleges that a City of Chicago

police officer and two City detectives violated, conspired to

violate, and failed to intervene to prevent the violation of his

constitutional due process rights during criminal proceedings

against him.   Specifically, plaintiff claims that defendants

fabricated evidence that twice led to jury convictions for the

1997 murder of his girlfriend, Magdaliz Rosario.   After each of

those convictions was reversed by the Illinois Appellate Court,

a judge tried and acquitted plaintiff of the crime, but not

before plaintiff spent over ten years in prison.[1]   This lawsuit,

brought pursuant to 42 U.S.C. § 1983, ensued.

---

[1] Plaintiff was actually tried four times in state court.   The
first trial resulted in a hung jury.

Before me is defendants' motion to dismiss plaintiff's complaint in its entirety. For the reasons that follow, I grant the motion.

I.

Defendants articulate a cascade of reasons for dismissing the first count of plaintiff's complaint, which asserts a constitutional violation captioned "Fabrication of Evidence." Cmplt. at 9. First, defendants argue that this putative constitutional claim is, in substance, a claim for malicious prosecution, and that such claims are not actionable pursuant to § 1983 because a state law remedy exists. Next, defendants argue that the Seventh Circuit does not recognize a constitutional claim for "fabrication of evidence" absent allegations—of which there are none here—of a kind that would bring the claim within the scope of *Brady v. Maryland*, 373 U.S. 83 (1963), i.e., that prosecutors failed to disclose facts relating to the manner in which the allegedly fabricated evidence was obtained. Defendants further contend that even if a constitutional claim for "fabrication of evidence" exists, the only evidence the complaint suggests was fabricated was defendants' trial testimony, for which defendants are immune from civil liability.

Defendants go on to argue that even if plaintiff adequately pleads a cognizable constitutional claim based on fabrication of evidence, that claim is time barred because it accrued decades

ago, at the time the evidence was fabricated. Finally, defendants argue that qualified immunity shields them from liability for the conduct plaintiff attributes to them. Defendants insist that these flaws doom all of the counts in plaintiff's complaint.

The overarching theme of plaintiff's response to this battery of arguments is that defendants' analysis relies on outdated Seventh Circuit law, and that more recent cases make clear that allegations of evidence fabrication support a Fifth and Fourteenth Amendment due process claim. In addition, plaintiff argues that the complaint adequately pleads such a claim, as well as claims for failure to intervene and conspiracy. Plaintiff further insists that his claims are not time barred because, pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), he could not have pursued them until he was finally acquitted of the underlying crime. Finally, plaintiff argues that defendants are not entitled to qualified immunity because the due process right he claims defendants violated was well established at the time of their alleged conduct.

II.

The approach courts in this district have taken to analyzing due process claims based on the fabrication of evidence has indeed evolved in recent years. As the Seventh Circuit's discussion in *Saunders-El v. Rohde*, 778 F.3d 556 (7th

3

Cir. 2015), explains, until recently, district courts commonly interpreted *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001), and its progeny "as an edict from this court that evidence fabrication-based due process claims can never form the basis of a constitutional tort." *Saunders-El*, 778 F.3d at 560. But the *Saunders-El* court called that view "inaccurate," and said it required "clarification." *Id.*

The court then explained that although *Newsome*, *Fox v. Hayes*, 600 F.3d 819 (7th Cir. 2010), and *Brooks v. City of Chicago*, 564 F.3d 830 (7th Cir. 2009), "establish that allegations that sound in malicious prosecution must be brought pursuant to state law," 778 F.3d at 560, more recent cases, including *Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012), *Fields v. Wharrie*, 740 F.3d 1107 (7th Cir. 2014) ("*Fields II*"), and *Petty v. City of Chicago*, 754 F.3d 416 (7th Cir. 2014), belie the "categorical[]" argument that "a claim of evidence fabrication cannot form the basis of a due process claim under § 1983 and must instead be brought as a state law malicious prosecution." *Saunders-El*, 778 F.3d at 560.

Indeed, in *Whitlock*, the court expressly stated that "a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way." 682 F.2d at 580. And in *Fields II*, the court "made clear that

4

fabricating evidence, including witness testimony, violates a clearly established constitutional right, such that qualified immunity does not shield the manufacturers of such evidence from liability." *Saunders-El*, 778 F.3d at 560 (citing *Fields II*, 740 F.3d at 1114).

The *Saunders-El* court was careful, however, not to replace one categorical rule with another, underscoring that "not every act of evidence fabrication offends one's due process rights…." *Id*. And as the court previously explained in *Petty v. City of Chicago*, 754 F.3d 416, 423 (7th Cir. 2014), a plaintiff's use of phrases such as "[m]anufactured false evidence…are not magic talismans" that "give rise to a cognizable claim where one does not exist." *Petty v. City of Chicago*, 754 F.3d 416, 423 (7th Cir. 2014) (citing *Whitlock* and *Fields II*). What matters, the *Petty* court explained, is "the true nature of the claim" and its "underlying facts." *Id*.

Here, the parties offer competing interpretations of *Whitlock* and *Fields II*, and they dispute whether and to what extent those cases undermine any support *Newsome* offers for defendants' arguments. In the end, however, I need not grapple with the nuances of those cases, or the fine distinctions they articulate between cognizable and non-cognizable claims based on fabrication of evidence, because although the more recent cases discredit the argument that *Newsome* categorically bars § 1983

claims based on allegedly fabricated evidence, none of them suggests the existence of a cognizable constitutional claim based on the facts alleged here.

Indeed, this case is factually distinct from the foregoing cases, most notably with respect to the type of evidence plaintiff claims was fabricated (to the extent his complaint identifies that evidence at all--more on that in a moment). In *Whitlock*, the plaintiff offered evidence that the state's "investigative team," which included both police officers and prosecutors, placed a witness "widely known in town for his alcohol problems" in seclusion for several days, then "supplied him money and alcohol and allegedly fed him additional details about the crime" before taking his statement. 682 F.3d at 571, 572. Police similarly "led" another witness with "a history of mental illness and drug abuse" to "concoct a tale" that included detailed incriminating evidence. *Id*. at 572. Both witnesses later recanted their testimony in sworn statements, affirming that "the police had told them what to say." *Id.*

Similarly in *Fields*, a prosecutor was alleged to have solicited false incriminating testimony from the defendant's fellow gang member, and then, after the defendant won a new trial (for unrelated reasons), the same prosecutor allegedly solicited false testimony from a different witness "to conceal his own wrongdoing." *Fields v. Wharrie*, 672 F.3d 505, 509 (7th

6

Cir. 2012) ("*Fields I*"). In addition, a second prosecutor allegedly coerced an eyewitness to falsely identify the defendant during the retrial. *Id.*

In *Petty*, the plaintiff alleged that police officers "coerced [a witness] into giving false evidence by threatening him with jail time if he did not cooperate, holding him against his will in a locked room without food or water for over 13 hours, badgering him, and pressuring him to identify Petty as one of the assailants." 754 F.3d at 423. And in *Saunders-El*, police officers were alleged to have planted the plaintiff's blood at the scene of a robbery. 778 F.3d at 559.

In this case, by contrast, plaintiff alleges neither manufactured physical evidence nor the "concoction" of a false story fed to a witness by law enforcement. Instead, plaintiff claims vaguely that defendants "falsely reported" either what plaintiff had told them during his post-arrest questioning, *see*, e.g., Cmplt. at ¶¶ 24, 32-34 ("Defendant...would later falsely report that [plaintiff] told him..."), or what they had perceived at the scene of Ms. Rosario's death. *See*, e.g., Cmplt. at ¶ 23 ("Defendant Rivera would later falsely report that [plaintiff] was not acting appropriately in light of the fact that his girlfriend had just been shot"), ¶ 27 ("Defendant Rivera later falsely reported that the gun was about 1½ feet deep in the 4 foot deep garbage can."). What the complaint does

not allege is *when* defendants made these reports, *to whom* they made them, or *how* the false reports were used in the course of plaintiff's criminal trials.

What emerges, however, from a review of the Illinois Appellate Court's decisions reversing plaintiff's convictions (the contents of which are appropriate for judicial notice, *see General Elec. Capital v. Lease Resolution*, 128 F.3d 1074, 1081 (7th Cir. 1997)), is that the contents of the alleged "false reports" are the very facts defendants testified to during plaintiff's trials. Yet, defendants are absolutely immune from § 1983 damages claims based on their testimony. *Briscoe v. LaHue*, 460 U.S. 325 (1983) (police officers, like other witnesses, entitled to absolute immunity from civil damages suits for testimony provided in judicial proceedings); *Polzin v. Gage*, 636 F.3d 834, 838 (7th Cir. 2011) (absolute immunity shields a person from § 1983 liability for testimony in judicial process); *see also Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1029 (7th Cir. 2006) ("[t]he Constitution does not require that police testify *truthfully*; rather the constitutional rule is that the defendant is entitled to a trial that will enable jurors to determine where the truth lies.") (original emphasis) (citation and internal quotation marks omitted).

Plaintiff does not dispute that defendants are immune from
§ 1983 liability for their trial testimony. He insists, however,
that his claim is not based on defendants' trial testimony, but
on their unspecified "false reports." Yet, the complaint does
not identify or describe the particulars of any "false reports"
except to describe their content (which mirrors defendants'
trial testimony), nor, as noted above, does it allege who
received those reports or how they were used. Plaintiff is
quick to point out that in ¶ 52 of the complaint, he alleges
that defendants provided "the false and fabricated information
set forth above to Dr. Nancy Jones," the state's forensic
expert. But the complaint does not identify any opinion Dr.
Jones offered at plaintiff's trial that he claims was based on
defendants' allegedly false reports to her, nor does it set
forth any other basis for concluding that false reports to her
deprived plaintiff of a fair trial. Accordingly, these
allegations do not raise plaintiff's due process claim "above
the speculative level." *Bell Atl. v. Twombly*, 550 U.S. 544, 555
(2007).

In sum, because defendants are immune from § 1983 liability
for their trial testimony, and because the complaint does not
sufficiently identify the contents, or the context, of any
"false reports" defendants made other than statements they made

at plaintiff's trial, I conclude that plaintiff has not stated an actionable due process claim in count I of his complaint.

Additionally, to the extent plaintiff claims that defendants' false reports led to the initiation of his criminal proceedings without probable cause, his allegations appear to state the elements of Illinois' law of malicious prosecution, which requires that: "(1) the defendants commenced judicial proceedings, (2) for which there was no probable cause, (3) the proceedings were instituted or continued maliciously, (4) the proceedings were terminated in the plaintiff's favor, and (5) the plaintiff sustained an injury." *Saunders-El*, 778 F.3d at 561. The Seventh Circuit's recent case law affirms *Newsome*'s holding that existence of that claim knocks out his constitutional claim. *Id*. at 560 ("allegations that sound in malicious prosecution must be brought pursuant to state law"); *Llovet v. City of Chicago*, 761 F.3d 759, 761 (7th Cir. 2014) (due process suits for malicious prosecution "can be brought under federal law only if there is no adequate state law remedy"); *see also Newsome*, 256 F.3d at 750 ("the existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution.").[2]

---

[2] Plaintiff's complaint does not use the phrase "probable cause." It suggests, however, that no probable cause existed for either his arrest or his prosecution, as it alleges that Rivera arrested plaintiff despite "no reason to suspect that

Because plaintiff has not stated an actionable constitutional claim in count I of his complaint, I need not reach defendants' remaining arguments for dismissal of this count. And because his remaining claims essentially depend on count I, they likewise fail. For the sake of completeness, however, I note that plaintiff's failure to intervene claim fails for the additional reason that plaintiff has not asserted sufficient factual material to raise his right to relief on these claims above the speculative level. As defendants correctly observe, the complaint does not allege how, when, or against what conduct any defendant should have intervened.

The complaint is similarly bereft of facts to suggest that defendants came to an agreement to violate plaintiff's constitutional rights. Plaintiff's protestation that conspiracy claims are not subject to heightened pleading standards misses the point; even under Rule 8, the complaint must allege sufficient facts to meet the plausibility standard of *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). His conspiracy

---

[plaintiff] had anything to do with Ms. Rosario's death," Complt. at ¶¶ 20, 22, and further asserts that murder charges were filed against plaintiff "based on false statements and false reports fabricated by Defendant Officers." Cmplt. at ¶ 56. Plaintiff's opposition injects uncertainty into plaintiff's legal theory, however, as it appears to argue that probable cause for his arrest both did, and did not, exist. *See* Opp. at 4 (arguing first that plaintiff's "cause of action is not barred by the existence of probable cause," but later asserting that "[p]laintiff was arrested based on fabricated probable cause.").

claim, which rests entirely on allegations of the individual defendants' conduct, coupled with conclusory statements that they "together reached an understanding," does not meet this standard.  *See Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009) (allegations of "parallel conduct," without more, fails to state a conspiracy claim).

III.

For the foregoing reasons, defendants' motion is granted. Plaintiff's complaint is dismissed without prejudice.  To the extent plaintiff can cure the deficiencies noted above consistently with Rule 11, he may amend his complaint within thirty days.


**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: June 23, 2015