IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Cesar Munoz,              )
                          )
    Plaintiff,            )
                          )
                          )
    v.                    )  Case No. 14 C 6794
                          )
                          )
Officer Norbert Rivera, Detective )
Edwin Dickinson, Detective Robert )
Rutherford and the City of Chicago, )
                          )
    Defendants.           )
                          )

MEMORANDUM OPINION AND ORDER

Cesar Munoz was tried four times for the 1997 shooting death of his girlfriend, Magdaliz Rosario. The first trial resulted in a hung jury. The second and third jury trials yielded convictions that were later reversed. *See People v. Munoz*, 810 N.E. 2d 65, 71 (Ill. App. 2004) ("*Munoz I*"); *People v. Munoz*, 923 N.E. 2d 898, 915 (Ill. App. 2010) ("*Munoz II*").[1] His final trial—a bench trial—produced an acquittal. In the interim, he spent over ten years in prison. He later brought this civil rights action alleging violation of his constitutional rights.

---

[1] As I explained in my previous opinion, I may take judicial notice of the contents of these decisions. *Munoz v. Rivera*, 2015 WL 3896917, at *3 (N.D. Ill. June 23).

1

Plaintiff's defense at each of his trials was that Ms. Rosario's death was a suicide. He testified that Rosario shot herself with a gun plaintiff kept in a drawer of their bedroom, and that upon hearing the shot, he "burst through the door," threw the gun out the window, and screamed for help. *See Munoz I*, 810 N.E. 2d at 71; *Munoz II*, 923 N.E. 2d at 915. Plaintiff claims that he consistently recounted these and other details to police officers when they questioned him about the incident, but the officers later stated falsely that he had changed his story during questioning.

Plaintiff's original complaint asserted five counts. The first three stated constitutional violations against three City of Chicago police officers pursuant to § 1983, each pursuant to a different theory of liability. Count I claimed a due process violation based on defendants' alleged fabrication of evidence. Count II asserted a failure to intervene. Count III claimed that defendants conspired to violate his constitutional rights. Pendant state law claims in Counts IV and V sought indemnification and to hold the City liable for the officers' wrongdoing under the theory of respondeat superior.

I dismissed all of these claims in my Memorandum Opinion and Order of June 23, 2015 ("Order"), enumerating multiple problems with plaintiff's asserted theories. *See Munoz v. Rivera*, No. 14 C 6794, 2015 WL 3896917 (N.D. Ill. June 23, 2015)

("*Munoz III*"). First, I explained that plaintiff's claim that defendants "falsely reported" the contents of plaintiff's post-arrest statements and their perceptions of the crime scene did not correspond either to "manufactured physical evidence nor [to] the 'concoction' of a false story fed to a witness by law enforcement"—the two scenarios in which the Seventh Circuit has acknowledged the viability of a fabrication of evidence claims. *Id*. at *3. I found that to the extent the complaint disclosed the substance of the "false reports," it appeared to be the very facts to which defendants testified at plaintiff's trial, and I explained that defendants are absolutely immune from suit for civil damages under § 1983 for their trial testimony. *Id*. at *3-*4. Moreover, if the "false reports" were intended to refer to statements other than defendants' trial testimony, I concluded that it was impossible to discern from the complaint what those statements were, to whom they were made, or how their use at trial deprived plaintiff of due process. *Id*. For these and other reasons, I dismissed the complaint and granted plaintiff thirty days to amend his complaint to cure the defects I identified.

Plaintiff's first amended complaint ("FAC") is substantially streamlined. It pleads only one constitutional claim based on fabrication of evidence, and it seeks to hold only Detective Rutherford and his employer, the City of Chicago,

3

liable for the asserted violation. The FAC's core allegations are that Detective Rutherford—who interviewed plaintiff at the police station following his arrest—told Dr. Jones—who performed the autopsy on Ms. Rosario and testified to her opinion that Ms. Rosario's death was a homicide—that plaintiff had provided changing and inconsistent statements to the police during his interrogation. Plaintiff alleges that Detective Rutherford knew at the time he conveyed that information to Dr. Jones that plaintiff's post-arrest statements were not, in fact, changing or inconsistent. Plaintiff alleges that Dr. Jones relied on Detective Rutherford's statements in arriving at her conclusion and that a due process violation resulted because the "evidence fabricated by Defendant Rutherford caused Dr. Jones to render a flawed opinion at each of [plaintiff]'s trials and secured [plaintiff]'s unjust and wrongful convictions." FAC at ¶ 84.

Defendants have moved to dismiss the FAC, asserting essentially the same arguments they raised in support of their previous motion to dismiss. I grant their motion for the following reasons.

***

In my previous opinion, I discussed at some length the legal landscape of plaintiff's fabrication of evidence claim. I explained that *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001), which courts in this district interpreted for many years as

4

barring due process fabrication of evidence, has more recently been construed to acknowledge such claims under certain circumstances. I cited *Saunders-El v. Rohde*, 778 F.3d 556 (7th Cir. 2015), *Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012), *Fields v. Wharrie,* 740 F.3d 1107 (7th Cir. 2014), and *Petty v. City of Chicago*, 754 F.3d 416 (7th Cir. 2014), as cases delineating circumstances in which constitutional fabrication of evidence claims were cognizable, then explained why those cases did not suggest a cognizable claim based on the facts plaintiff alleges here. *See Munoz III* at 2015 WL 3896917, at *2-*3. Nothing about the FAC alters my previous analysis.

The most substantial additions to the FAC are plaintiff's allegations about what Detective Rutherford advised Dr. Jones regarding plaintiff's post-arrest statements to the police. Plaintiff alleges that Detective Rutherford:

- "advised Dr. Jones, and/or caused Dr. Jones to be advised, that during his interrogations of Cesar, Cesar changed his statements and advised Defendant Rutherford of a version of events that was inconsistent with his prior statements to the police." FAC at ¶ 44;

- "advised Dr. Jones, and/or caused Dr. Jones to be advised, that Cesar attempted to hide the gun after the shooting." FAC at ¶ 45; and

- "advised Dr. Jones and/or caused Dr. Jones to be advised, that Cesar changed his statements in regard to how he entered the bedroom where the shooting occurred and as to how the shooting occurred." FAC at ¶ 46.

5

According to plaintiff, Rutherford knew that the information he provided to Dr. Jones was false. Plaintiff alleges that Dr. Jones's opinion that Ms. Rosario's death was a homicide was based, in important part, on information she received from the police investigation, including, specifically, information about plaintiff's changing post-arrest statements; about the location of the gun in the trash can; about a "domestic altercation" at the time of the shooting; and about the door to the bedroom being "broken down." FAC ¶¶ 50-53. In plaintiff's view, these allegations are sufficient to state a due process claim that "Dr. Jones' opinion was <u>fabricated</u> by Defendant Rutherford." Opp. at 10 (original emphasis).

It bears pausing to consider the novelty of plaintiff's theory. Plaintiff does not claim that Dr. Jones "fabricated" her expert opinion. Indeed, he disavows any claim of wrongdoing by Dr. Jones. *Id*. at p. 3 n. 1 ("Dr. Jones would not have known she was rendering manufactured false testimony as it was Defendant Rutherford, not Dr. Jones, that manufactured the false testimony.") In plaintiff's view, however, her opinion was nevertheless "fabricated" because defendant Rutherford "manufactured false evidence by stating false facts that he knew to be false to Dr. Nancy Jones...who in turn presented manufactured false testimony based on those false facts." *Id*. at 3. A due process violation resulted, plaintiff argues,

because "false evidence, manufactured by Defendant Rutherford, caused Plaintiff to be deprived of his liberty when it was delivered by Dr. Jones." *Id*. at 4. This theory of § 1983 liability, however, is not supported by any authority.

Plaintiff cites *Napue v. People of State of Ill.*, 360 U.S. 264 (1959), and *Mooney v. Holohan*, 294 U.S. 103, 112 (1935), but neither is on point, as both have to do with the state's knowing use of perjured testimony. As noted above, plaintiff does not claim that Dr. Jones's testimony was perjured, nor does he claim that any of the prosecutors involved in his criminal trials knew or believed that any of the state's witnesses was lying. In short, plaintiff's reliance on *Napue* and *Holohan* is mistaken.

Plaintiff tries to squeeze his due process claim into the *Whitlock* mold, insisting that Rutherford "fed Dr. Jones a false story as to what was known through the investigation." Opp. at 8. *Cf*. *Whitlock*, 682 F.3d at 571-72 (plaintiff offered evidence that the state's "investigative team" of police officers and prosecutors placed a witness known widely for his alcohol problems in seclusion, then gave him money and alcohol and fed him details about the crime before taking his statement). But Dr. Jones testified as an expert witness, and "[f]abricated opinion evidence...must be both wrong and *known to be wrong* by the expert." *Stinson v. Gauger*, 799 F.3d 833, 843 (7th Cir. 2015) (original emphasis) (*citing Fields v. Wharrie*, 740 F.3d

7

1107, 1110 (7th Cir. 2014). Again, however, plaintiff acknowledges that Dr. Jones had no knowledge that any facts on which she based her opinion were wrong.

Moreover, plaintiff could and did test the factual underpinnings of Dr. Jones's opinion testimony through cross-examination. Plaintiff testified in his own defense, and he affirmatively "denied having changed his story" with respect to how he disposed of the gun. *Munoz II*, 923 N.E. 2d at 915. The jury was free to assess the credibility of this denial against Rutherford's testimony about plaintiff's changing and inconsistent statements, and, if it believed plaintiff, to discount Dr. Jones's testimony, particularly since, as plaintiff acknowledges, she told the jury, "I consider the fact that stories are changing when if something happens, the truth does not change." FAC at ¶ 58.

Moreover, plaintiff's own testimony, in the main, confirmed the very inconsistencies he now claims Detective Rutherford falsely reported to Dr. Jones. For example, plaintiff testified that he "denied telling [Detective Rutherford and another officer] that he argued or fought with Magdaliz on the day of the incident," but later testified that he "told the detectives there was a struggle between him and Magdaliz, even though there was none." *Munoz I*, 810 N.E. 2d at 71. In other words, the jury need not even have credited Detective Rutherford's

8

testimony over plaintiff's to conclude that plaintiff's post-arrest statements to the police were inconsistent on this point, since plaintiff *himself* told the jury that he both denied and admitted to a "struggle" with Ms. Rosario when he spoke to the police after her shooting. Plaintiff similarly acknowledged giving various accounts of how he entered the bedroom, stating that when he was questioned at the police station he "told the detectives that he did not mean to say in his earlier account that he literally broke the door down; rather he meant to say that he tried to open it with a nail." *Id.*[2]

In the end, however, regardless of whether plaintiff's testimony in his own defense supported or contradicted Rutherford's alleged statements to Dr. Jones, there simply is no authority for plaintiff's claim that his Fourteenth Amendment due process rights were violated when the jury heard expert testimony that, although innocently rendered, was based on

---

[2] Plaintiff urges me "not [to] review [*Munoz I* and *Munoz II*] to determine whether Plaintiff provided inconsistent versions of events to the investigating officers." Opp. at 9. But I am not drawing any conclusions from those decisions about whether plaintiff's statements were in fact inconsistent. The point instead is that plaintiff availed himself of the opportunity to rebut Rutherford's testimony about plaintiff's inconsistent statements with his own trial testimony, and that while plaintiff did so when he denied "changing his story" with respect to the gun, he actually corroborated Rutherford's testimony with respect to whether he struggled with Ms. Rosario and how he opened the bedroom door.

allegedly false facts. Accordingly, I need not reach the remainder of defendants' arguments for dismissal.

***

For the foregoing reasons, defendants' motion to dismiss is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: November 23, 2015